UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DEAN PEPIN, PLAINTIFF | : | CIVIL ACTION NO: |
| | : | |
| VS. | : | |
| | : | |
| | : | |
| SNAP RTO, LLC; KHATER | : | |
| INTERNATIONAL, LLC D/B/A BEST | : | |
| VALUE AUTO SALES; AND AHMED | : | |
| MOHAMMED, DEFENDANTS | : | OCTOBER 8, 2018 |

## COMPLAINT

### I.   INTRODUCTION

1.     This is a suit brought by a consumer for violations of the Truth in Lending Act, the Connecticut Unfair Trade Practices Act and Civil Forgery in connection with an erroneously termed "rent-to-own agreement" that financed repairs to Plaintiff's automobile.

### II.   PARTIES

2.     Plaintiff, Dean Pepin ("Plaintiff"), is a natural person and consumer residing in Berlin, Connecticut.

3.     Defendant Snap RTO, LLC ("Snap") is a Utah limited liability company with principal offices in Salt Lake City, Utah.

4.     Defendant Khater International, LLC ("Khater") is a Connecticut limited liability company and car repair facility located in Berlin, Connecticut.

5.     Defendant Ahmed Mohammed ("Mohammed") is a natural person and principal of Khater. He resides in New Britain, Connecticut.

1

III.    JURISDICTION

6.      This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1640, 28 U.S.C. § 1331 and Fed. R. Civ. P. 18(a).  Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

7.      This Court has jurisdiction over all defendants.

8.      Snap regularly conducts business in Connecticut;

9.      Khater is organized under the laws of the state of Connecticut; and

10.     Mohammed is a resident of Connecticut.

11.     Venue in this Court is proper, because Plaintiff resides in Connecticut and the transaction occurred in this state.

IV.    FACTUAL ALLEGATIONS

12.     Before February 26, 2018, Plaintiff brought his 1998 Chevrolet Malibu (the "Vehicle") to Khater for repairs.

13.     Muhammed quoted Plaintiff approximately $700 for the repairs to the Vehicle.

14.     Plaintiff possessed sums sufficient to cover that cost and authorized $700 worth of repairs.

15.     At the time, Plaintiff was also interested in purchasing a used vehicle from Khater.

16.     Mohammed told him that Plaintiff's $700 would be better spent on the down payment of a vehicle.

17.     Mohammed further represented that he had a "great program" through Snap that for only $10 and he could finance the cost of repairs over a period of time.

18.    Plaintiff completed an online credit application, but did not sign any contracts for the payment of the repair work.

19.    Plaintiff was not given a copy of any contract evincing the terms of finance for this transaction.

20.    Plaintiff returned to Khater one or two days later to retrieve his Vehicle.

21.    Plaintiff called Snap to ascertain the payment amounts.

22.    Snap told him that he was paying $90.59 on a bi-weekly basis.

23.    Plaintiff requested a copy of the contract and was provided with a document from Snap entitled "Rent-To-Own Agreement" (the "Agreement").

24.    The Agreement bore a signature that was not Plaintiff's, because he had never signed the Agreement.

25.    The Agreement stated that Plaintiff was purportedly leasing the following "items": "Shop Supplies, Hazardous Materials, HVAC Blower Motor Resistor Install, HVAC Blower Motor Resistor, Drive Belt Install, Serpentine Belt, Wheel Bearing Assembly, Wheel Bearing, Battery Install, Battery, Oil Change, Ignition Switch Install, Ignition Switch, Brake Pads & Rotors Install, Disc Brakes & Rotors".

26.    In aggregate, Plaintiff was charged $494 for labor, $11.17 for shop supplies, a $2 hazardous materials charge and $622.66 for parts. In total, the work on the vehicle cost $1,129.83.

27.    Notwithstanding the characterization of the transaction as a "lease" of property, the transaction was, in reality, a provision of services that included materials that were utilized in the repair.

28.    Due to the nature of the transaction, it is not possible to return any of the items, and many of the designated items are intangible and incapable of a transfer of possession.

29.    Specifically, Plaintiff cannot return the labor, shop supplies or hazardous materials charge.

30.    Moreover, it is not practicable for Plaintiff to return the parts installed on his vehicle.

31.    Snap never received title or possession from Khater of any of the tangible materials utilized in the repair, further evidencing the sham nature of the purported "lease", because Snap did not own any property upon which it could lease to Plaintiff.

32.    Despite its title, the Agreement is not a rent-to-agreement and is subject to the Truth in Lending Act and Connecticut usury laws.

33.    Under the terms of the Connecticut Rent-to-Own Act, a contract thereunder may only be for "goods" and cannot be for services. Therefore the Rent-to-Own Act, Conn. Gen. Stat. § 42-240 et seq., does not apply to this transaction.

34.    The total payment under Agreement equals $2,365.06, which means that the finance charge (inclusive of the $10 processing fee) equals $1,245.26. The annual percentage rate ("APR") on the transaction is greater than 167%.

35.    Pursuant to Conn. Gen. Stat. § 37-4, the maximum allowable rate of interest is 12% in this type of transaction.

36.    Plaintiff has paid approximately $1,200 under the Agreement. Such sum satisfies the costs associated with the work performed on his vehicle.

## V.    CAUSES OF ACTION

### a.    TRUTH IN LENDING ACT (SNAP ONLY)

37.    Because Plaintiff could not terminate the agreement at any time without penalty due to the nature of the goods and services financed under the Agreement, the Agreement is not subject to the TILA exemptions under 15 U.S.C. § 1602(g) and12 C.F.R. § 226.2(a)(16).

38.    Since TILA applies to the Agreement, Snap violated TILA, because it failed to provide Plaintiff with a copy of the Contract which contained the required Truth in Lending disclosures required by 15 U.S.C. § 1638 in a form he could keep prior to the consummation of the transaction.

39.    Snapviolated TILA, because the Agreement failed to include the disclosures required by 15 U.S.C. § 1638 in the manner required, and it failed to provide any disclosure of the finance charge or the annual percentage rate of interest.

40.    Snap is liable to Plaintiff for his actual damages, statutory damages of $2,000, and a reasonable attorney's fee.

### b.    CIVIL FORGERY (KHATER AND MOHAMMED)

41.    Khater and Mohammed committed civil forgery by signing Plaintiff's name to the Agreement.

42.    Khater and Mohammed are liable to Plaintiff for double his damages pursuant to Conn. Gen. Stat. § 52-565.

c.  CONNECTICUT UNFAIR TRADE PRACTICES ACT

43.    Snap, Khater and Mohammed ("Defendants") engaged in unfair acts and practices in trade or commence in violation of Conn. Gen. Stat. § 42-110a *et seq.* in connection with this transaction as follows:

a.  Khater and Mohammed forged Plaintiff's signature on the Agreement;

b.  Khater and Mohammed made false statements regarding the cost of the repairs and the cost of financing.

c.  Defendants charged more than the maximum allowance APR as permitted by Conn. Gen. Stat. § 37-4;

d.  Khater violated Conn. Gen. Stat. § 14-65f by performing work in excess of the estimated cost of the repairs without Plaintiff's authorization;

e.  The aforedescribed violations of TILA.

44.    Defendants are liable to Plaintiff for actual damages, punitive damages, and attorney's fees and costs.

45.    Plaintiff also seeks equitable relief in the form of an order stating that the Agreement is unenforceable and that no finance orders are owed.

WHEREFORE, Plaintiff claims actual damages, TILA statutory damages of $2,000, punitive damages, attorney's fees and costs, and an order stating that the Agreement is unenforceable.

PLAINTIFF, DEAN PEPIN,

By: _____

Daniel S. Blinn (ct02188)
dblinn@consumerlawgroup.com
Brendan L. Mahoney (ct29839)
bmahoney@consumerlawgroup.com
Consumer Law Group, LLC
35 Cold Spring Rd. Suite 512
Rocky Hill, CT  06067
Tel. (860) 571-0408
Fax (860) 571-7457